**RECORD NO. 13-4401**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

KENNETH A. WINGLE,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

**OPENING BRIEF OF APPELLANT
KENNETH A. WINGLE**

Peter D. Eliades
ELIADES & ELIADES
408 North 6th Avenue
Hopewell, Virginia 23860
(804) 458-6366 Telephone
petereliades@eliades-eliades.com

*Counsel for Appellant*　　　　　　　　　　　　　　July 26, 2013

**TABLE OF CONTENTS**

                                                                 Page

TABLE OF CASES, STATUTES AND AUTHORITIES.................. ii, iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION..... 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW.................... 3

STATEMENT OF THE CASE...................................... 3

STATEMENT OF THE FACTS..................................... 4

SUMMARY OF THE ARGUMENT.................................... 6

ARGUMENT

    I.   STANDARD OF REVIEW................................ 6

    II.  DISCUSSION OF ISSUES.............................. 6

CONCLUSION STATING PRECISE RELIEF SOUGHT................... 14

REQUEST FOR ORAL ARGUMENT.................................. 15

CERTIFICATE OF COMPLIANCE.................................. 15

CERTIFICATE OF SERVICE..................................... 16

**TABLE OF CASES, STATUTES AND AUTHORITIES**

Page

**Cases**

United States v. Smith, 395 F.3d 516 (4th Cir. 2005)...... 6

Graves v. Austin, 2012 WL 6019099 (W.D. Va. Dec. 3, 2012). 8

Commonwealth v. Graham, 2000 WL 1810020
    (Va. Cir. Ct. 2000)................................. 8

Commonwealth v. Fells, 50 Va. Cir. 55 (Va. Cir. Ct. 1999). 8

Virginia v. Moore, 553 U.S. 164 (2008).................. 8

Bostic v. Rodriguez, 667 F.Supp. 2d 591 (E.D.N.C. 2009)... 8

U.S. v. Tibbetts, 396 F.3d 1132 (10th Cir. 2005).......... 9

United States v. Holt, 264 F.3d 1215 (10th Cir. 2001)..... 9, 10

U.S. v. Twilley, 222 F.3d 1092 (9th Cir. 2000)............ 11

U.S. v. Chanthasouxat, 342 F.3d 1271 (11th Cir. 2003)..... 11

U.S. v. Lopez-Valdez, 178 F.3d 282 (5th Cir. 1999)........ 12

Page

**Statutes**

18 U.S.C § 13.......................................... 1

§ 18.2-266 Code of Virginia, as amended................ 1

21 U.S.C. § 844(a).................................... 1

18 U.S.C. § 3401...................................... 2

18 U.S.C. § 3402...................................... 2

28 U.S.C. § 1291...................................... 2

§ 46.2-1078.1 Code of Virginia, as amended............ 6, 7

§ 46.2-804 Code of Virginia, as amended............... 11, 12, 13

§ 46.2-804(2) Code of Virginia, as amended............ 11

§ 46.2-852 Code of Virginia, as amended............... 12, 13

§ 19.2-294.1 Code of Virginia, as amended............. 13

**Rules**

Federal Rules of Appellate Procedure § 11(a)(2).......... 2

Federal Rules of Appellate Procedure § 4(b).............. 2

RECORD NO. 13-4401

_____

IN THE
United States Court of Appeals
FOR THE FOURTH CIRCUIT
_____

**UNITED STATES OF AMERICA,**

                                    Plaintiff-Appellee,

v.

**KENNETH A. WINGLE**

                                    Defendant-Appellant.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION
_____

**BRIEF OF APPELLANT**
_____

**TO: THE HONORABLE CHIEF JUDGE AND JUDGES OF THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

<u>STATEMENT OF THE SUBJECT MATTER
AND APPELLATE JURISDICTION</u>

On January 11, 2013, the Appellant entered into a guilty plea conditionally, to: (1) operating a motor vehicle while under the influence of alcohol (in violation of 18 U.S.C. §13 assimilating 18.2-266 et seq. of the 1950 Code of Virginia, as amended), and (2) possession of marijuana (in violation of 21 U.S.C. §844(a)),

1

while preserving his right to appeal the U. S. Magistrate Court's Order of January 4, 2013, that denied the Appellant's Motion to Suppress evidence in his case (pursuant to FRCP §11(a)(2)).

Pursuant to 18 U.S.C. §3401, the Appellant asserts that the U. S. Magistrate Court had original jurisdiction over the prosecution of the Appellant on this five-count information.

The Appellant timely noted his appeal of the U. S. Magistrate Court's denial of his Motion to Suppress evidence on January 24, 2013.

The U. S. District Court's appellate jurisdiction is established pursuant to 18 U.S.C. §3402.

The U. S. District Court's Order, entered on March 20, 2013 (again denying the Appellant's Motion to Suppress) and appealed from is a "Final Order" that disposed of all issues with respect to the parties.

A timely notice of appeal was filed by the Appellant on April 2, 2013.

Jurisdiction by the Court of Appeals is established pursuant to Appellant's appeal of right from this judgment of conviction and sentence imposed by the U. S. Magistrate Court and affirmed by the U. S. District Court. (Federal Rule of Appellate Procedure §4(b)). Jurisdiction by the Court of Appeals is established further by 28 U.S.C. 1291 for such "Final Orders" as they are

2

established through the judgment of conviction and the sentence imposed thereby.

## STATEMENT OF THE ISSUE

Whether the Trial Court erred in denying the Appellant's Motion to Suppress, by ruling that there was no Fourth Amendment violation and that there were no grounds to suppress the evidence obtained as a result of the stop.

## STATEMENT OF THE CASE

The Appellant was charged in a five-count information stemming from a motor vehicle stop on September 2, 2012. The Appellant subsequently filed a Motion to Suppress all of the evidence that was seized by law enforcement as a result of this vehicle stop. An evidentiary hearing on this Motion was held by U. S. Magistrate Judge, David J. Novak, on November 26, 2012. At the conclusion of the hearing, Judge Novak ordered that the Appellant and the Government file Briefs in support of their respective positions, and he further ordered that a transcript of the suppression motion hearing be prepared. On January 4, 2013, Judge Novak issued his Memorandum Opinion denying the Appellant's Motion to Suppress. The Appellant then, pursuant to a plea agreement, entered conditional pleas of guilty to Counts One and Two of the Criminal Information, and the Government dismissed Counts Three, Four and Five. The Appellant noted his appeal of

3

the U. S. Magistrate Judge's denial of his Motion to Suppress to the U. S. District Court.  On March 20, 2013, Judge Henry E. Hudson issued his Memorandum Opinion affirming the ruling of the U. S. Magistrate Judge and denying the Appellant's Motion to Suppress.  The Appellant timely notes this appeal.

## STATEMENT OF THE FACTS

In the early hours of the morning on September 2, 2012, the Appellant was travelling eastbound on Route 36 in the vicinity of Fort Lee, Virginia within the special territorial jurisdiction of the United States and within the jurisdiction of this Court having concurrent jurisdiction with Prince George County, Virginia. Route 36 is a four-lane divided highway with two eastbound lanes and two westbound lanes.

Officer Brian Michaels, a police officer with the Department of the Army, pulled up directly beside the Appellant's vehicle at the red light at Sisisky Entrance Gate to Fort Lee. Officer Michaels' unmarked cruiser was in the right lane and the Appellant's vehicle was in the left lane (J.A. at 44). Officer Michaels' police cruiser was equipped with a dashboard-mounted video camera at the time.

Officer Michaels testified that when the light turned green, both vehicles "came off the light" (J.A. at 44).  He further testified that the Appellant pulled out ahead of him, but as he began to pull up alongside the Appellant and as he began to pull

4

ahead of the Appellant, he observed that the Appellant's "vehicle started drifting over toward" his vehicle (J.A. at 44-45). The officer stated it was at that time that he observed the Appellant with his head down looking towards his lap, and that a bluish-white light was illuminating the Appellant's face and chest (J.A. at 45).

Officer Michaels testified that he could not tell if the Appellant ever left his lane of travel (J.A. at 45). The officer testified under cross-examination that "it was a fairly quick drift… [that] probably ran no more than 50 feet, if that" (J.A. at 61). He explained that none of this drifting was caught on his dashboard camera because that camera did not capture anything on the side of his cruiser (J.A. at 47).

Officer Michaels testified that after he observed the Appellant's quick drift, he initiated a traffic stop of the Appellant's vehicle. The officer confirmed on cross-examination that other than the drifting, he observed no other bad driving by the Appellant on Route 36 on the night in question (J.A. at 68). The Appellant's driving within his lane of travel, not at an excessive speed, and with proper signaling can clearly be seen on the video generated by this dashboard camera (Government's Exhibit 10, admitted into evidence by the Magistrate Judge, J.A. at 69). The first view of the Appellant's vehicle on the video from the officer's dashboard camera shows the Appellant's vehicle nowhere

5

near the center line of the two eastbound travel lanes.  In fact, the Appellant's vehicle is first captured in the very center of his left travel lane.  No erratic driving by the Appellant is ever captured on this video of the Appellant and his vehicle.

**ARGUMENT**

I.  Standard of Review.

The standard of review for an appeal from a judgment entered by a district court judge to the Court of Appeals is that the district court's conclusions of law are reviewed de novo, and their findings of fact are reviewed for clear error.  *United States v. Smith,* 395 F.3d 516,519 (4th Cir. 2005).

II.  Discussion of Issues.

A.  Driving a motor vehicle while operating a handheld device.

The Government takes the position that an officer can initiate a traffic stop based solely on his observation of a driver using a handheld device to text.  The Government argues that even though a citation for a violation of this statute (§46.2-1078.1 of the Code of Virginia, as amended) could not be issued to the driver, the act of texting still gives the officer reasonable articulable suspicion to stop the vehicle.  This argument is totally without merit.  The Virginia legislature went out of its way to include Subsection C. in §46.2-1078.1 in order

6

to make it clear that a violation of this section is not a primary offense, and therefore not a basis to stop a driver.

Subsection C. of §46.2-1078.1 reads as follows:

> C. No citation for a violation of this section shall be issued unless the officer issuing such citation has cause to stop or arrest the driver of such motor vehicle for the violation of some other provision of this Code or local ordinance relating to the operation, ownership, or maintenance of a motor vehicle or any criminal statute.

The clear language in this subsection prohibits a citation for texting unless the officer issuing such citation has cause to stop or arrest the driver for the violation of some other provision of the Code of Virginia or of a local ordinance relating to the operation, etc. of a motor vehicle or any criminal statute.

In fact, Officer Michaels responded to the Court's comment, "[y]ou really pulled him over because of the texting issue then", by explaining, "[i]t would have been the texting, the texting statute is only a secondary offense statute" (J.A. at 48). This explanation by the officer to the Court was an accurate acknowledgement of the applicable law as it relates to texting while driving.

In Section II A. of his Memorandum Opinion, Judge Novak correctly ruled that "[a]s currently drafted, the Virginia texting statute mandates the existence of a primary offense before a texting violation may be charged, thereby determining that no chargeable offense for texting exists absent an accompanying

7

primary offense. Consequently, a stop of a vehicle by a police officer based solely on the driver texting while driving offends the Fourth Amendment." (J.A. at 116).

Simply put, the statute renders texting a secondary offense. Again, quoting from Judge Novak's Memorandum Opinion:

> Because an officer may not enforce the texting statute (*i.e.,* issue a citation) absent another violation, an officer may not stop a vehicle based solely on a violation of this statute. *See Graves v. Austin,* 2012 WL 6019099 at *2 n. 5 (W.D. Va. Dec. 3, 2012) ("Under the Virginia Code, an officer may not effectuate a stop of a driver for not wearing a seat belt; it is a secondary offense.") *see also Commonwealth v. Graham,* 2000 WL 1810020, at *3 (Va. Cir. Ct. 2000)(J. Kelsey)(noting that the legislature specifically withdrew authority for law enforcement officers to stop vehicles for the secondary offense of failure to wear a seat belt)(discussing *Commonwealth v. Fells,* 50 Va. Cir. 55 (Va. Cir. Ct. 1999)). Therefore, a police officer may not stop a vehicle for a violation of the texting statute. (J.A. at 115)

In an effort to avoid the limitations contained in the texting statute, the Government attempts to rely on the Supreme Court's decision in *Virginia v. Moore*, 553 U.S. 164 (2008). The Court, in *Bostic v. Rodriguez,* 667 F.Supp. 2d 591 (E.D.N.C. 2009), rejected a challenge of the North Carolina seat belt law that was based on *Moore*. This Court did not interpret *Moore* "to undermine the more basic principle that an officer cannot arrest an individual when the officer lacks probable cause to believe that a crime has occurred and that state law determines whether a particular act constitutes a crime". *Id.* At 608 n. 6.

8

B.  Failing to maintain one lane of travel.

When Officer Michaels was asked by the Court, "So what's the primary?" The officer's response was, "[t]he primary would have been the inattentive driving, drifting towards my lane. I can't say specifically that he crossed the actual line." (J.A. at 48).

Despite the officer never having mentioned to the driver that he had failed to maintain his lane of travel, the Government argued that this was tantamount to reckless driving and therefore another basis for the officer's reasonable articulable suspicion to stop the Appellant's vehicle. The officer admits that on three separate occasions he cited to the Appellant "texting while driving" as the sole reason for the stop (J.A. at 66-67). When asked by defense counsel as to whether he mentioned to the Appellant anything about weaving, or about having to brake or veer his car to avoid a collision with Appellant's vehicle, Officer Michaels responded, "No, sir." (J.A. at 66). The officer further admitted that he never mentioned to the Appellant any type of impaired, reckless or improper driving (J.A. at 67).

In *U.S. v. Tibbetts*, 396 F.3d 1132 (10th Cir. 2005), the Court noted,

> "…that when police completely ignore the purported reason justifying the initial traffic stop, a Court may consider that failure when evaluating the objective reasonableness of the stop under the Fourth Amendment. As we have stated, reasonableness is the "touchstone of a Fourth Amendment analysis, to be evaluated under the totality of the circumstances. *See United States v. Holt*, 264 F.3d 1215,

9

> 1230-1231 (10th Cir. 2001). A police officer's failure to address the purported violation giving rise to the stop, while not dispositive of the Fourth amendment question, is one of the circumstances that courts may evaluate against this touchstone. *Tibbetts* at 1139.

In *Tibbetts*, the officer testified that he stopped the Appellant for three purported traffic violations – dangling object from rear-view mirror, wiring across the top of the windshield and undersized tire mudflaps. However, the officer never mentioned or addressed the mudflap issue with the Appellant at the time of the stop. The 10th Circuit Court of Appeals ruled that this fact, standing alone, would not be sufficient to justify the Appellant's motion to suppress, but that it was a factor for the Court to consider in its analysis of the reasonableness of the stop. *Tibbetts* at 1139.

In this case, Officer Michaels took three opportunities to explain his reason for stopping the Appellant, and on all three occasions failed to mention that the Appellant made a quick drift towards his cruiser or that he failed to stay within one lane of travel while operating his vehicle. *See Government's Exhibit 10, Video of the stop/arrest* at 1:49:15; 1:53:20 and 1:54:22. Had Officer Michaels nearly been hit by the Appellant, but for some quick evasive action on his part (which is absolutely not reflected in the video), one would have expected that to be the first reason-for-stop out of the officer's mouth.

10

The Appellant was charged under §46.2-804 as it related to his "drifting". Nowhere in that statute is it made a violation of the law to "drift". The only possible subsection of §46.2-804 that comes close to applicability in this case is Subsection 2:

> A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from that lane until the driver has ascertained that such movement can be made safely; (Code of Va., §46.2-804(2))

Because the officer could not testify as to whether or not the Appellant actually crossed the center line of travel (J.A. at 45), the facts testified to clearly do not constitute a violation of this statute. The officer's mistake here was that of law, not fact. Several Federal Circuit Courts have consistently held that an officer's "belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop". *U.S. v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000); and that "… failure to understand the law by the very person charged with enforcing it is not objectively reasonable". *Tibbetts* at 1138; and that "… a mistake of law cannot provide the objectively reasonable grounds for reasonable suspicion or probable cause". *U. S. v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003); and that "… if officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as

11

pretext for effecting stops seems boundless and the costs to privacy rights excessive." *U.S. v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999).

When the officer observed only a "fairly quick drift" that ran no more than 50 feet (less than two seconds at only 25 m.p.h.) and that he cannot say caused the Appellant's vehicle to cross the center line of travel, it is his mistake of law to believe that a violation of §46.2-804 has occurred. Judge Novak indicated in his opinion that this drift was roughly "…a five second drift…" (J.A. at 111). This timeline is not supported by the evidence nor is it found on page 6 of the hearing transcript that he cites (J.A. at 46).

    C.   <u>Reckless driving</u>.

The Court repeatedly attempted to ascertain from Officer Michaels as to whether the totality of the circumstances surrounding the Appellant's driving were a violation of Virginia's reckless driving statute (§46.2-852). The Court correctly recited the language in that statute to be, "Irrespective of the maximum speeds permitted by law, any person who drives a vehicle on any highway recklessly or at a speed or manner so as to endanger the life, limb or property of any person shall be guilty of reckless driving" (J.A. at 58). When asked earlier on in his testimony, again by the Court, as to why he didn't charge the Appellant with reckless driving, Officer Michaels answered, "… I didn't feel it

12

warranted a reckless driving ticket" (J.A. at 47-48). The officer went on to say that the primary offense for which he stopped the Appellant was, "… the inattentive driving, drifting towards my lane. I can't say specifically that he crossed the actual line" (J.A. at 48). When pressed yet again as to whether he would have written the Appellant a citation for violation of the reckless driving statute (had he found alcohol not to be a factor), the officer maintained that he "probably would have just gave [sic] him the texting citation. I don't feel it would have been a Class 1 misdemeanor punishable type of offense." The officer went on to say, "His action to me did not… rise to what I would have considered… a Class 1 misdemeanor for the second traffic infraction" (J.A. at 59). This subjective opinion of the officer was not a mistake of law. The facts surrounding the Appellant's driving that night, as testified to repeatedly by Officer Michaels, come nowhere close to supporting the notion that the officer had reasonable articulable suspicion that the Appellant was driving a vehicle so as to endanger the life, limb or property of any person. As stated earlier, those same facts surrounding the Appellant's driving do not even support a violation of §46.2-804 (failure to maintain lane of travel), much less a violation of §46.2-852 (reckless driving).

It should be noted that Judge Novak relied on §19.2-294.1 in concluding that reckless driving and DUI could not both be charged

13

by the officer. This statute does not prevent the charging of both, but rather a conviction for both offenses if they came from the same set of facts.

Judge Novak's opening sentence of his Memorandum Opinion is indicative of the error in his ultimate decision. The Judge states, in pertinent part, "… after a traffic stop that followed Appellant's vehicle swerving and nearly colliding with a police vehicle…". (J.A. at 109). There is nothing in the record to indicate reckless driving by the Appellant. The police video (Government's Exhibit 10) clearly shows the lack of any swerving by the Appellant and the lack of any evasive maneuvers by the officer. It is absolutely crucial to note the smooth pursuit of the officer's camera throughout this stop (even when the Appellant's car cannot actually be seen on camera). Indeed, the Government's case is based on that which can't be seen on video, is never mentioned by the officer on video, and was never charged by the officer. Neither texting while driving nor inattentive driving is reckless driving.

## CONCLUSION

For the foregoing reasons, the Appellant asks that the District Court's denial of Appellant's Motion to Suppress be reversed, that the evidence be suppressed, and that his convictions be dismissed.

14

**REQUEST FOR ORAL ARGUMENT**

The Appellant requests oral argument should this Court so allow.

Respectfully Submitted,

KENNETH A. WINGLE

By:_____/s/_____
Counsel

Peter D. Eliades, Esquire, VSB #23876
ELIADES and ELIADES, P.C.
408 N. 6th Ave., P. O. Box 967
Hopewell, VA 23860
(804) 458-6366 (804) 458-6380 (fax)

**CERTIFICATE OF COMPLIANCE**
**WITH LENGTH AND TYPEFACE REQUIREMENTS**

This brief has been prepared using twelve point, monospaced typeface (Courier News) found on Microsoft Word (Windows XP).

Exclusive of the table of contents, table of citations, statement with respect to oral argument, any addendums containing statutes, rules or regulations and the certificate of service, this brief contains 16 pages.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief and/or copy of the word or line print-out.

7/26/2013                             _____/s/_____
 Date                                 Peter D. Eliades

15

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 26, 2013, I will electronically file the foregoing with the Clerk of court using the CM/ECF system, which will then send notification of such filing (NEF) to the following:

Katharine Adams, Special Asst. U.S. Attorney
Office of the Staff Judge Advocate
441 First Street, Building 1108
Fort Lee, VA  23801
(804)765-1477  --  (804)765-1926 (fax)

S. David Schiller, Esquire
U. S. Attorney's Office
600 E. Main Street
Suite 1800
Richmond, VA  23219
(804)819-5400

                                                               /s/
                                            Peter D. Eliades